# PALMER v. BARRETT.

ERROR TO THE CITY COURT OF BROOKLYN, NEW YORK.

No. 194. Submitted March 31, 1896. — Decided April 13, 1896.

In view of the reservation of jurisdiction made by the State of New York in the act of June 17, 1853, c. 355, ceding to the United States jurisdiction over certaın lands adjacent to the navy yard and hospital in Brooklyn, the exclusıve authority of the United States over the land covered by the lease, the ouster from possession under which is the subject of controversy in this action, was suspended while the lease remained in force.

THIS was a writ of error to the city court of Brooklyn, an inferior court of the State of New York. The action was brought to recover damages for an alleged unlawful ouster of the plaintiff from the possession of two market stands in the Wallabout market in the city of Brooklyn, and to recover damages for the conversion of certain described personal property which was a part of said stands. Defendant Palmer answered by a general denial, while the defendant Droste, in addition to specific denials, alleged in substance that he lawfully acquired the premises in controversy by a lease from Palmer, his co-defendant, and a lessee of the city of Brooklyn.

It appeared from the proof that the stands in question were erected upon ground, part of lands acquired by the govern-

ment of the United States for the purposes of a navy yard and naval hospital, and that by chapter 355 of an act of the legislature of the State of New York, passed June 17, 1853, that State ceded to the United States jurisdiction over the lands acquired for the purposes stated. The statute of the State of New York making the cession provided as follows:

"1. The jurisdiction of this State over all lands in and adjacent to the city of Brooklyn, belonging to the United States, and used and occupied as a navy yard and naval hospital, and which has not heretofore been ceded to the United States, is hereby ceded to the United States for the uses and purposes of a navy yard and naval hospital, on the condition contained in this act, and according to the plan furnished by the Navy Department, and bounded as follows: . . .

"2. Such jurisdiction is ceded as aforesaid on the condition that the United States shall pay, or cause to be paid to the city of Brooklyn the sum of eleven thousand three hundred and eighty-three dollars and seventy-three cents, with interest from the first day of February, eighteen hundred and fifty-two, until paid, being the balance of an assessment now due on a part of said lands for grading and paving Flushing avenue. . . "

"4. The United States may retain such use and jurisdiction as long as the premises described shall be used for the purposes for which jurisdiction is ceded, and no longer. . . . Nor shall the jurisdiction so ceded to the United States impede or prevent the service or execution of any legal process, civil or criminal, under the authority of this State.

"5. Nothing in this act contained shall be construed so as to allow the common council of the city of Brooklyn hereafter to tax or assess any of the lands of the United States for any purpose whatsoever."

In October, 1884, an agreement was entered into between the commandant of the Brooklyn navy yard, representing the Navy Department, and a commissioner of the department of city works of the city of Brooklyn, which agreement recited that permission was granted to the city of Brooklyn to occupy certain described portions of "vacant" government

land, situated on Washington and Flushing avenues, in the city of Brooklyn, "to be used only as a stand for the market wagons bringing produce into the city from the adjacent country and those with whom they trade; that the city of Brooklyn will patrol and efficiently police the said premises from the hospital wall on the east to the navy yard fence on the westerly side of Washington avenue; that no permanent buildings or structures be erected on the lands, there being no objection to the erection of wooden booths, sheds or other temporary buildings for the sale of groceries, farm produce, horse feed and other goods, for restaurant purposes, and for the purpose of shelter from the weather; and that during the occupancy of said premises by the city of Brooklyn the water tax for water consumed by the navy yard be reduced to the same rate as that charged to manufacturing establishments in the city of Brooklyn." The agreement further provided that the permit in question might be terminated at any time on thirty days' notice from the Secretary of the Navy, when the city should be entitled to remove all property thereon not belonging to the United States.

At the close of the testimony counsel for defendant moved the court to dismiss the complaint, because of a want of jurisdiction over the subject-matter of the action. This want of jurisdiction was based on the contention that the land upon which the stands were erected was to all intents and purposes territory of the United States, and that as the action was local in its character the courts of another sovereignty could not entertain jurisdiction.

The motion to dismiss being denied the cause was submitted to the jury, who found for the plaintiff. Judgment having been entered on the verdict the cause was appealed to the general term of the court, where the judgment was affirmed. This judgment of affirmance was subsequently affirmed by the Court of Appeals of the State, 135 N. Y. 336, and after the filing of the mandate in the clerk's office of the city court of Brooklyn, a writ of error was allowed by a justice of this court.

*Mr. H. E. Tremain* and *Mr. M. L. Towns* for plaintiffs in error.

*Mr. Hugo Hirsh* and *Mr. Henry S. Rasquin* for defendant in error.

Mr. Justice White, after stating the case, delivered the opinion of the court.

Beyond the fact that the government was the owner of the land known as the Wallabout market at the time of the passage by the legislature of the State of New York of the act of June 17, 1853, the record does not disclose when or how the government acquired title to the land. Counsel for plaintiffs in error, however, say that the following act of Congress, approved March 3, 1853, c. 102, 10 Stat. 220, 224, relates to this land:

"For the purpose of paying the lien existing on the lands recently purchased as an addition to the navy yard at Brooklyn, twelve thousand two hundred and forty-seven dollars and five cents, to be paid by the Secretary of the Navy, if upon examination he shall find the same to be due as a lien on the purchase of the said land: and the Secretary of the Navy is hereby empowered and directed to sell and convey to any purchaser all that part of the navy yard lands at Brooklyn between the west side of Vanderbilt avenue and the hospital grounds, containing about twenty-six and a half acres, including Vanderbilt and Clinton avenues: *Provided*, That said lands shall not be sold at less price than they cost the government, including interest with all assessments and charges: *And provided further*, That prior to the sale of said lands exclusive jurisdiction shall be ceded to the United States of all the remaining lands connected with the said navy yard, belonging to the United States."

This act rather tends to make certain what would be inferable from the New York statute, that the land in question had been purchased by the United States without the consent of the State being given at the time the purchase was made. If, therefore, we assume that the lands were acquired by the

government by purchase, still section 8 of article 1 of the Constitution of the United States, conferring upon Congress authority to exercise exclusive legislation over all places purchased by the consent of the legislature of the State in which the same shall be, for the erection of forts, magazines, arsenals, dock-yards and other needful buildings, has no application. *Fort Leavenworth Railroad* v. *Lowe*, 114 U. S. 525. The question therefore depends upon the provisions of the act of the legislature of the State of New York, already referred to, by which jurisdiction was ceded to the United States. Looking at that act, we find that it was "for the uses and purposes of a navy yard and naval hospital," and that it was therein expressly provided "that the United States may retain such use and jurisdiction as long as the premises described shall be used for the purposes for which jurisdiction is ceded, and no longer. . . . Nor shall the jurisdiction so ceded to the United States impede or prevent the service or execution of any legal process, civil or criminal, under the authority of this State." The power of the State to impose this condition is clear. In speaking of a condition placed by the State of Kansas on a cession of jurisdiction made by that State to the United States over land held by the United States for the purposes of a military reservation, this court said in *Fort Leavenworth Railroad* v. *Lowe*, (p. 539,) *supra:* "It not being a case where exclusive legislative authority is vested by the Constitution of the United States, that cession could be accompanied with such conditions as the State might see fit to annex, not inconsistent with the free and effective use of the fort as a military post."

Now, the land in question here was clearly not used by the United States and occupied by it for a navy yard or naval hospital. On the contrary, it composed a part of the vacant land adjoining the navy yard, which had been leased by the United States to the city of Brooklyn for market purposes. The lease contained a specific proviso that the grounds should be patrolled and policed by the city authorities. Moreover, a direct consideration was received by the United States for the lease, since it provided that a supply of water for all the

purposes of the navy yard at reduced rates should be furnished by the city to the United States during the use by the former of the land covered by the lease. In the absence of any proof to the contrary, it is to be considered that the lease was valid, and that both parties to it received the benefits stipulated in the contract. This being true, the case then presents the very contingency contemplated by the act of cession, that is, the exclusion from the jurisdiction of the United States of such portion of the ceded land not used for the governmental purposes of the United States therein specified. Assuming, without deciding, that, if the cession of jurisdiction to the United States had been free from condition or limitation, the land should be treated and considered as within the sole jurisdiction of the United States, it is clear that under the circumstances here existing, in view of the reservation made by the State of New York in the act ceding jurisdiction, the exclusive authority of the United States over the land covered by the lease was at least suspended whilst the lease remained in force.

These views dispose of the only Federal question which the case presents, and the judgment below is, therefore,

*Affirmed.*