Divine v. Bank.

PAUL E. DIVINE, *Administrator, v.* UNAKA NATIONAL
BANK *et al.*

*(Knoxville.*    September Term, 1911.)

1. **STATE'S JURISDICTION.**    **Remains over land bought or con-
demned by the United States for its own use; qualification
of rule.**

Where the United States buys or condemns land within a State
for its own use, the jurisdiction of the State wherein the land
lies remains the same as before, with the qualification that the
State cannot interfere with the full, free, and perfect use for
which it was acquired or in any way embarrass that use. (*Post,
pp. 106, 107.*)

Cases cited and approved: Railroad v. Lowe, 114 U. S., 525;
Ohio v. Thomas, 173 U. S., 276.

2. **SAME.**    **Same.**    **Sate's reservation of right to serve process
within ceded territory is limited to actions arising without
that territory; rights enforced in State courts, when.**

Where land within a State is acquired by the United States, with
the consent of the State, the jurisdiction of the United States
over it is, under the federal constitution (art. 1, sec. 8, par. 17),
complete and exclusive, and the State's reservation of the right
to serve civil and criminal process within the territory ceded
is limited to causes of action arising outside of the ceded
territory; but the laws of the State for the protection and
enforcement of the municipal or private rights of individuals
residing within the ceded territory continue in force, unless
the United States provides legislation for such territory, and
where jurisdiction is not given by federal laws to federal courts
to assert and protect private rights, such rights may be en-
forced in the State courts. (*Post, pp.* 107, 108.)

Cases cited and approved: Railroad v. Lowe, 114 U. S., 525;
Railroad v. McGlinn, 114 U. S., 542; Downes v. Bidwell, 182
U. S., 244, 298.

Divine v. Bank.

3. **JURISDICTION. Must be conferred upon federal courts by federal constitution or statutes; no probate jurisdiction.**

The federal courts have no jurisdiction, except that conferred by the federal constitution or acts of congress, and they have no probate powers, or authority to appoint an administrator. (*Post, pp.* 108, 109.)

Cases cited and approved: Turner v. Bank, 4 Dall., 8; United States v. Hudson, 7 Cranch, 32; United States v. Bevans, 3 Wheat., 337.

4. **SAME. Of State and federal courts is concurrent unless the jurisdiction of the federal courts is made exclusive.**

The State courts have concurrent jurisdiction with the federal courts in all cases wherein the jurisdiction of the latter is not made exclusive, either by direct legislation or by necessary implication, or by such incompatibility with the existence of State authority that it could not be supposed the State courts should assume jurisdiction. (*Post, pp.* 108, 109.)

Cases cited and approved: Claflin v. Houseman, 93 U. S., 130; Water Co. v. Defiance, 191 U. S., 194.

5. **SAME. Federal officer in ceded territory may be sued in State courts for acts as a private citizen.**

A person holding a federal office within the territory acquired by the United States, with the consent of the State, who assumes to exercise powers not appertaining to his office, or not conferred upon him by law, is so far forth not a federal officer, and not protected by his office, and may be sued in a State court embracing such territory, just as if he were a private citizen, by persons injured through such unlawful acts. (*Post, p.* 109.)

Cases cited and approved: Slocum v. Mayberry, 2 Wheat., 1; Teal v. Felton, 12 How., 284; Buck v. Colbath, 3 Wall., 334; Scranton v. Wheeler, 179 U. S., 141, 151.

6. **SAME. Probate jurisdiction for appointment of administrators is in State courts, and not in federal courts, even though**

decedent died on territory ceded by State to federal government.

No probate powers, or authority to appoint an administrator, have been conferred upon the federal courts; and, therefore, this power remains with the State courts. So, where an inmate of a national home for disabled soldiers, located on land ceded by the State to the federal government, subject to the State's reservation of the right to serve civil and criminal process within the territory ceded, dies, the State court has probate jurisdiction of his estate, and an administrator appointed by the proper State probate court has authority to compel the officers of such home to deliver to him the personal property and assets of the decedent. (*Post, pp.* 109, 110.)

Code cited and construed: Sec. 3935 (S.); sec. 3043 (M. & V.); sec. 2203 (T. & S. and 158).

Cases cited and approved: Yonley v. Lavender, 21 Wall., 276; Byers v. McAuley, 149 U. S., 608; O'Callaghan v. O'Brien, 199 U. S., 89; Bedford Quarries Co. v. Thomlinson, 36 C. C. A., 276.

7. BANKS AND BANKING. Bank cannot be compelled to pay certificate of deposit without its surrender, or indemnity against it, if lost.

A bank cannot be compelled to pay a certificate of deposit issued by it, without a surrender of the certificate, unless its production has become impossible on account of its loss, or for other reason, and then a bond of indemnity must be given. (*Post, pp.* 110, 111.)

8. CHANCERY PLEADING AND PRACTICE. Supreme court may remand cause for amended bill bringing in necessary parties, with right to renew demurrer, when.

Where a bill is demurrable for want of necessary parties, the supreme court may remand the cause, with leave to the complainant to file an amended bill, bringing in said necessary parties, with a view of obtaining a proper decree against them as a prerequisite to relief against the party sued; and in default of the filing of such amended bill within a time to be

Divine v. Bank.

fixed by the chancellor, the defendant will be given leave to renew the demurrer. (*Post, p.* 111.)

FROM WASHINGTON.

Appeal from the Chancery Court of Johnson City to the Court of Civil Appeals, and by *certiorari* from the Court of Civil Appeals to the Supreme Court.—HAL. H. HAYNES, Chancellor.

DIVINE & MOORE, for complainant.

S. C. WILLIAMS, for defendant.

MR. JUSTICE NEIL delivered the opinion of the Court.

The bill contains the following allegations:

"That Thomas Brown died intestate in Washington county, Tennessee, on the 12th day of November, 1908, within the limits of the reservation of the Mountain Branch of the National Home for Disabled Volunteer Soldiers, and as a member thereof; that the complainant was duly appointed as his administrator by the county court of Washington county, on November 30, 1909, and qualified and gave bond as such. Letters of administration issued in pursuance thereof, and the original or duly certified copies thereof will be filed on or before the hearing, if required.

"The complainant would further show that his intestate was a soldier of fortune, a wanderer over the

face of the earth, without family or home. He was born in India, came to America in time to participate as a soldier of the United States in the war between the States from 1861 to 1865, and later drifted southward to some of the Spanish-speaking countries, where he remained for some time. Later said intestate returned to the United States, and after wandering from place to place, without any fixed place of residence, habitation, home, or domicile, and without any purpose or intention on his part so to do, or to permanently establish himself theretofore, he came to the said Mountain Branch of the National Home for Disabled Volunteer Soldiers, in Washington county, Tennessee, and became a member thereof, by reason of his military service as aforesaid, where he died.

"Complainant would further show that his intestate at the time of his death left two small open accounts or deposits in some of the local banks here in Johnson City, Tennessee, which have been paid over to and received by him in virtue of his said appointment as administrator, and that in addition his said intestate had the following estate, rights, and credits at the time of his death, to wit:

"(1) A deposit in the defendant, the Unaka National Bank, here in Johnson City, Tennessee, in the sum of $312, made by said intestate voluntarily and of his own volition and motion after he became a member of said Mountain Branch, and which said deposit is represented by a certificate issued to said intestate by the defendant therefor, No. 9630.

"(2) Another deposit made in like manner and under like conditions and circumstances with the defendant for $25; the certificate representing same being No. 9640.

"Complainant would show that these said certificates of deposit were in the possession of said intestate at the time of his death, the property of said intestate, unindorsed, untransferred, and undisposed of in any way, and in no wise hypothecated. Complainant would show that said intestate died within said Mountain Branch reservation limits, and the authorities thereof in the discharge of their duties gathered up the same as bailees, trustees, and agents of and for those rightfully entitled thereto, and your complainant has been unable to secure the same, or obtain the possession thereof, as he verily believes he is entitled to do. Complainant charges that said authorities have no title or ownership, claim, or beneficial interest in said certificates, no property rights in the same, and no right, power, or authority to sell, transfer, convey, indorse, collect, or make any assignment thereof in law, equity, or in fact. And complainant further charges on information and belief that no such attempt has been made.

"Complainant would further show that said authorities also hold another item or asset, gathered up in the same way, the property of said intestate; that is, an original and duplicate check, issued to said intestate by the defendant Unaka Bank, on Lloyd's Bank, Limited, of London, England, for about one pound and seven pence, which was unassigned, and which was the property of

the decedent at the time of his death, and which now constitutes an asset of his said estate, due, owing, and collectible from said defendant bank.

"Complainant would further show that as administrator of the estate of the said Thomas Brown, under and by virtue of the appointment and letters of administration aforesaid, he has requested of said authorities of the said Mountain Branch the possession and delivery of said certificates and assets as above mentioned and shown, but that said authorities, for one captious reason or another, among them the asserted contention that said authorities were not in the reach or subject to process of the courts of Tennessee, or were exempt therefrom in this behalf, though without any claim of interest, right, or title or benefit therein, have failed, neglected, and refused to make the delivery demanded, or to turn over the same to your complainant as such administrator on demand. Complainant would further show that as such administrator he has made the said Unaka National Bank acquainted with the said failure on the part of the said home authorities, and said bank has failed and refused to pay over the amount of said certificates on demand without a surrender of said certificates concurrently, which condition your complainant has been unable to comply with for the reasons above shown.

"Your complainant would further show that said amounts hereinbefore set forth and shown are *bona fide* assets of the estate of his intestate, and that he is advised that he has a right to come into your honor's

Divine v. Bank.

court and compel the defendant by proper order and decree to pay over the same, with full interest and the costs of the cause. Said amounts are due, owing, and unpaid, and said defendant bank is responsible and liable therefor to your complainant. Said home authorities in law have no claim of right, title, or beneficial interest in the said certificates and checks, could not lawfully make such claim, and do not so attempt to do. Said home or its authorities are without power to collect, sell, transfer, or assign the same, and there is no law or authority whereby they can be constituted or nominated as administrator as against your complainant, or exercise in the least or in any wise any probate jurisdiction whatever. Complainant further charges that no other jurisdiction or forum than the county court of Washington county, Tennessee, can appoint an administrator, and your complainant can lawfully receive said amounts from the said defendant, or compel it to pay over or turn over the same."

The bank demurred on several grounds, the substance of which is that it was entitled to have the certificates surrendered before payment, and that the bill did not allege that any demand had been made, accompanied by such offer of surrender of the certificates of deposit, and contained no sufficient excuse for such failure.

The chancellor sustained the demurrer and dismissed the bill, and the complainant appealed to the court of civil appeals, and in that court the decree of the chancellor was reversed. Thereupon the cause was brought

to this court by the writ of *certiorari*, and is here for consideration.

The ground embracing the home was ceded by this State to the United States by an act passed in the year 1901, Acts 1901, c. 98), which contained the following provisions:

"That the consent of the general assembly be, and is hereby, given to the acquisition by the National Home for Disabled Volunteer Soldiers by purchase, condemnation, or donation of lands not exceeding two thousand acres, in Washington county, for the establishment and maintenance of a branch of said home within five miles of Johnson City; that jurisdiction of the lands aforesaid, and their appurtenances, which may be acquired by the managers of the National Home for Disabled Volunteer Soldiers for the uses and purposes of said home, be, and is hereby, ceded to the United States of America: Provided, however, that all civil or criminal process issued under the authority of the State of Tennessee, or any officer thereof, may be executed on said lands and in the buildings which may be located thereon, in the same manner as if jurisdiction had not been ceded, as aforesaid," etc. *State, ex rel.*, v. *Willet*, 117 Tenn., 341, 342, 97 S. W., 301.

The law is that when the United States merely buy land within a State for their use, or when it is condemned for such purpose, the jurisdiction of the State wherein the land lies remains the same as before, just as if any other owner had acquired the land, with the qualification, of course, that the State cannot interfere

with the full, free, and perfect use for which it was acquired, or in any way embarrass that use. *Fort Leavenworth, etc.,* v. *Lowe,* 114 U. S., 525, 5 Sup. Ct., 995, 29 L. Ed., 264; *Ohio* v. *Thomas,* 173 U. S., 276, 19 Sup. Ct., 453, 43 L. Ed., 699.

But where land within a State is acquired by the United States, with the consent of a State, then under article 1, section 8, subsec. 17, of the federal constitution, the jurisdiction of the United States is complete and exclusive, and the reservation contained in such grants, to the effect that the State shall have the right to serve civil and criminal process within the territory ceded, is limited to causes of action arising outside of the ceded territory; the purpose of such reservation being to prevent the territory's becoming an asylum for fugitives from justice. This must be understood and applied, however, in the light of the principle of public law that, when the new sovereign has not provided legislation for the territory so acquired, the laws of the former sovereign continue in force so far as needed or the protection and enforcement of the municipal or private rights of individuals residing within the territory. *Fort Leavenworth R. R. Co.* v. *Lowe,* supra; *Chicago Rock Island, etc., Co.* v. *McGlinn,* 114 U. S., 542, 5 Sup. Ct., 1005, 29 L. Ed., 270; *Downes* v. *Bidwell,* 182 U. S., 244, 298, 21 Sup. Ct., 770, 45 L. Ed., 1088, 1110, 1111. It is said that court jurisdiction is necessarily dependent upon the legislative power of the sovereign under whose authority the court was constituted, and that when the latter ceases the former must fail with it. This is in general

true, but an exception must be recognized when the new sovereign, out of deference to the principle of public law above referred to, recognizes the continued existence within the particular territory of the laws of the former sovereign. Those laws cannot be made effective, except through the aid of a court. The federal courts have no jurisdiction, except that conferred by the constitution or by an act of the congress. *U. S.* v. *Hudson,* 7 Cranch, 32, 3 L. Ed., 259; *Turner* v. *Bank of N. A.,* 4 Dall., 8, 1 L. Ed., 718; *U. S.* v. *Bevans,* 3 Wheat., 337, 4 L. Ed., 404. And where they have jurisdiction over controversies arising out of the nature of the questions involved, there is a limitation upon that jurisdiction, measured by an amount of value in excess of that involved in the present controversy, except those in which the federal government is itself a party. If jurisdiction is not given by federal law to federal courts to assert and protect the private rights conceded to exist within the newly acquired territory, they must remain outside the pale of law unless they can be asserted in the courts of the States. The federal government and the governments of the several States are not foreign to each other, but together constitute one complete system, the federal government performing its functions within its apportioned limits, and the States performing theirs. The courts of the States have concurrent jurisdiction with the courts of the United States in all cases wherein the jurisdiction of the latter is not made exclusive, either by direct legislation, or by necessary implication, or by such incompatibility with the existence of State au-

Divine v. Bank.

thority as that it could not be supposed the State courts should undertake the matter. *Claflin* v. *Houseman*, 93 U. S., 130, 23 L. Ed., 833; *Defiance Water Co.* v. *Defiance*, 191 U. S., 194, 24 Sup. Ct., 63, 48 L. Ed., 144. If the State courts can exercise such jurisdiction in the enforcement of causes of action growing out of federal laws, we can see no reason why they cannot enforce causes of action recognized by federal law as continuing to exist in territory ceded by the States, but which the federal government has provided no means of enforcing through its own courts. If there be any person, holding federal office within such territory, who assumes to exercise powers not appertaining to his office, or not conferred upon him by law, such person is so far forth not a federal officer, and not protected by his office, and may be sued in a State court of the State embracing such territory, just as if he were a private citizen, by persons injured through such unlawful acts. *Teal* v. *Felton*, 12 How., 284, 13 L. Ed., 990; *Buck* v. *Colbath*, 3 Wall., 334, 18 L. Ed., 257; *Slocum* v. *Mayberry*, 2 Wheat., 1, 4 L. Ed., 169; *Scranton* v. *Wheeler*, 179 U. S., 141, 151, 21 Sup. Ct., 48, 45 L. Ed., 126, 133.

To apply these principles to the facts of the present case: The federal courts have been given no probate powers, by the congress, or authority to appoint an administrator of a decedent. *Yonley* v. *Lavender*, 21 Wall., 276, 22 L. Ed., 536; *Byers* v. *McAuley*, 149 U. S., 608, 13 Sup. Ct., 906, 37 L. Ed., 867; *O'Callaghan* v. *O'Brien*, 199 U. S., 89, 25 Sup. Ct., 727, 50 L. Ed., 101, 111. And see cases collected in note to *Bedford Quarries*

*Co.* v. *Thomlinson,* 36 C. C. A., 276, 277. Therefore this power remains with the State courts; and the county court of Washington county acted in accordance with law when it appointed an administrator of Brown's estate—he having died in Washington county, leaving there the certificates of deposit on the defendant bank also located within the county. Shan. Code, section 3935. As incident to the administratorship, Maj. Divine became at once entitled to the possession of the evidences of indebedness above referred to. Under the facts stated in the bill, the officers of the home are without legal justification in detaining these papers from him, and he is entitled to bring his suit against them therefor. No federal court can entertain jurisdiction of the controversy, because, even laying out of view all other reasons, the amount involved is not sufficiently large. The complainant could have replevined the papers referred to in the circuit or chancery court of Washington county prior and preparatory to the present action, or he could have brought before the chancery court in this action both the bank and the persons residing within the home assuming to withold these papers from him, and there had the question of the right of possession as between the two settled, and at the same time could have caused the money to be paid into court by the defendant bank, or on its refusal to pay could in due course have had judgment against it, on final hearing, with execution to enforce it. In either event the bank would have been protected. The bank is entitled to have the certificates surrendered when it makes payment, or in case they can·

not be surrendered because of loss, or other impossibility of production, then to have a bond of indemnity given to protect it. In the present case we think no such impossibility exists. We have concluded, therefore, to direct the entry of the following decree:

Let the demurrer be overruled, and the cause remanded to the chancery court of Washington county, with leave to the complainant to file an amended bill, bringing in the persons who have possession of the certificates and check referred to and contesting their right to hold the same. In default of the filing of such amended bill within a time to be fixed by the chancellor, the defendant bank will have leave to renew its demurrer.

The costs of the appeal will be paid by the complainant.