DAYTON COAL & IRON CO., LTD., *v.* CINCINNATI, N. O. & T. P. RY. CO.* *et al.*

(*Knoxville.*  September Term, 1913.)

**COURTS. Conflicting jurisdiction. State courts and federal courts. Injunction.**

 A State court has no jurisdiction to enjoin an action in the federal court for freight charges in accordance with schedule filed, on the ground of a contract for a lower rate, notwithstanding Interstate Commerce Act (Act Cong. Feb. 4, 1887, ch. 104, 24 Stat. 387 [U. S. Comp. St. 1913, sec. 8595]) sec. 22, providing that nothing contained in the act shall abridge the remedies now existing at common law or by statute, but the provisions of this act are in addition to such remedies.

Case cited and approved: Divine v. Bank, 125 Tenn., 98.

Case cited and distinguished:  Texas & P. R. Co. v. Abiline Cotton Oil Co., 204 U. S., 446.

FROM HAMILTON.

Appeal from the Chancery Court of Hamilton County.—T. M. MCCONNELL, Chancellor.

---

*Note:  This case was decided at the September term, 1913, of the supreme court of Tennessee at Knoxville.  It went to the supreme court of the United States, and was there affirmed, and is reported in 239 U. S., 446, 36 Sup. Ct., 137, 60 L. Ed., ——.  It was not therefore ordered by the supreme court to be published until after said affirmance, and hence the delay.  EDITOR.

PRITCHARD, ALLISON & LYNCH and BROWN, SPURLOCK & BROWN, for appellants.

BURKETT, MILLER & MOORE, for appellee.

MR. CHIEF JUSTICE NEIL delivered the opinion of the Court.

Bill by the Dayton Coal & Iron Company to enjoin a suit brought by the Cincinnati, New Orleans & Texas Pacific Railway Company in a federal court in Ohio to recover $4,933.08 claimed by the latter to be due for an unpaid balance of freight charges. These charges had accrued under certain shipments of iron ore from Cartersville, Ga., to Dayton, Tenn., the Nashville, Chattanooga & St. Louis Railroad Company, operating the Western & Atlantic Railroad Company, being the initial carrier, and delivering the ore to the Cincinnati, New Orleans & Texas Pacific Railway Company at Chattanooga, for transporation thence to Dayton. The complainant claimed that it had with the defendant Cincinnati, New Orleans & Texas Pacific Railway Company a special contract for these shipments covering quite a long period at the rate of sixty cents per ton, duly recognized by the other defendants. In its settlements with the Cincinnati, New Orleans & Texas Pacific Railway Company from time to time, as the shipments proceeded, it had, by an agreement or arrangement between the two, reserved for future adjustment the ten cents difference between the contract rate and seventy cents, which latter the defendant railway companies

Coal & Iron Co. v. Railroad.

claimed was the legal rate, fixed in the manner stated infra. It was alleged in the bill that the Nashville Chattanooga & St. Louis Railway Company and the Western & Atlantic Railroad Company were necessary parties for the proper disposition of the controversy. These companies answered, claiming the seventy-cent rate as the lawful rate. The Cincinnati, New Orleans & Texas Pacific Railway Company also answered, and likewise filed a cross-bill, insisting upon the seventy-cent rate as the only true and lawful one, notwithstanding the special contract for the sixty-cent rate. The determinative question, on the merits, seems to be whether the contract rate of sixty cents was binding on the railroads, or the seventy-cent rate fixed in the manner stated below.

If we could reach the conclusion that we have jurisdiction of the controversy presented in this case, we should feel bound to decide it in favor of the defendants, and dismiss the bill on the merits, since we believe the evidence shows that defendant Nashville, Chattanooga & St. Louis Railway Company filed its schedule covering the seventy-cent rate from Cartersville, Ga., to Dayton, Tenn., with the Interstate Commerce Commission on February 2, 1907, and that it took effect on March 5, 1907; that a copy of this was sent to the Cincinnati, New Orleans & Texas Pacific Railway Company, and duly stamped by them; that this copy showed the latter railroad as a concurring carrier; that that road actually concurred by receiving freight under that schedule, and making settlements by it, and under

it, and we believe, as matter of law, this made the rate
a joint one, the matter not falling within the rule later
established by the commission, beginning with May 1,
1907, by which an express written concurrence was re-
quired, pursuant to certain printed forms prescribed
by that body, to be numbered and filed with it. This
rate being the lawful one during the period of the ship-
ments of ore which are the subject of this controversy,
the railroads were bound to conform to it, or suffer
very heavy penalties prescribed by the Interstate Com-
merce Act. It would in no wise impeach the legality
of this rate that the Cincinnati, New Orleans & Texas
Pacific Railway Company failed to post this tariff in
the office at Dayton. Nor would its operation be in any
wise abridged by the fact that the road last mentioned,
overlooking the true tariff, quoted to complainant the
old tariff previously in force, and that in reliance upon
this quotation the complainant made a contract for
heavy shipments of ore covering quite a long period.
Fixed rates cannot be controlled in this manner. If
they could, there would soon be no rates really fixed,
and all of the evils of discrimination, rebates, etc., de-
signed to be overcome by the act would again become
manifest and active. This does not mean that com-
plainant is without redress for the act of the Cincin-
nati, New Orleans & Texas Pacific Railway Company
in misleading it. Complainant has not yet paid that
company the extra ten cents per ton, although the latter
has paid the Nashville, Chattanooga & St. Louis Rail-
way Company. There is a suit pending between com-

plainant and the Cincinnati, New Orleans & Texas Pacific Railway Company in the federal court in Cincinnati. We see no reason why relief cannot be had in that cause. Or, if this be wanting, it is not evident why the present complainant cannot present its claim for reparation before the Interstate Commerce Commission. It seems from the act and its amendments this reparation does not necessarily take the form of damages. Or, if this form of relief be inapplicable to the present *status* of the claim, there seems no just ground for denying that an application could be made to the commission for an order restraining the Cincinnati, New Orleans & Texas Pacific Railway Company from enforcing an unjust demand (if it be unjust) under the act and its amendments. Mann-Elkins Bill (Act Cong. June 18, 1910, ch. 309, 36 Stat. 551 [U. S. Comp. St. 1913, sec. 8583]) section 12, amending section 15 of original act; Act to Regulate Commerce, as amended to date, sec. 15.

But we are of the opinion that this court really has no jurisdiction of the case. It is true that the acts of Congress are binding on the States, and that we have held that our State courts may enforce rights of action, in general, arising under federal statutes; yet there are two qualifications—one, where exclusive jurisdiction is vested in the courts of the United States, and the other where the nature of the matter is such that we cannot properly or safely deal with it, or the State courts are unfitted for the work. *Divine* v. *Bank*, 125

134 Tenn. 15

Tenn., 98, 140 S. W., 747, 39 L. R. A. (N. S.), 586. The act and its amendments were designed to secure reasonable interstate rates, and to prevent discrimination. The commission is given large powers not only to fix or adjust, raise, or lower rates, but to make rules whereby these rates can be created or arranged, and used without doing injustice, creating undue hardship, or operating so as to produce discrimination. If the State courts should undertake to construe these rules, as well as the provisions of the statutes (and both must be done to rightly administer the law), there would be great danger of conflicting decisions and resultant confusion. It is essential, we think, to the harmonious working of the system that it be left wholly in the hands of the commission and the federal courts. And we think Congress so intended. It is true section 22 contains the following clause:·

"Nothing in this act contained shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this act are in addition to such remedies."

"This clause however," said the supreme court of the United States in *Texas & P. R. Co.* v. *Abilene Cotton Oil Co.*, 204 U. S., 446, 447, 27 Sup. Ct., 350, 358 (51 L. Ed., 553, 9 Ann. Cas., 1075), "cannot in reason be construed as continuing in shippers a common-law right, the continued existence of which would be absolutely inconsistent with the provisions of the act. In other words, the act cannot be held to destroy itself. The clause is concerned alone with rights recognized

Coal & Iron Co. v. Railroad.

in or duties imposed by the act, and the manifest purpose of the provision in question was to make plain the intention that any specific remedy given by the act should be regarded as cumulative, when other appropriate common-law or statutory remedies existed for the redress of the particular grievance or wrong dealt with in the act.''

We know of no common-law remedies that could be applied to the case before us that would not be wholly inconsistent with the provisions and purposes of the Interstate Commerce Act and its amendments. It results that the original bill, and the cross-bill must be dismissed for want of jurisdiction of the subject-matter.