THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* MORRIS KRAUS, Appellant.

Second Department, December 5, 1924.

Crimes — jurisdiction of State courts over crime committed in Brooklyn Navy Yard — land comprising Brooklyn Navy Yard was acquired by United States without consent of State — subsequently by Laws of 1853, chap. 355, State Law of 1892, §§ 28, 29, and State Law of 1909, §§ 28, 29, State ceded land to United States — State courts do not have jurisdiction of crime.

Courts of this State do not have jurisdiction of a crime committed within the Brooklyn Navy Yard since it appears that while the United States acquired the land comprising the Brooklyn Navy Yard without the consent of the State, the State subsequently, by chapter 355 of the Laws of 1853, sections 28 and 29 of the State Law of 1892, and sections 28 and 29 of the State Law of 1909, ceded the land to the United States, reserving only the right to serve or execute any legal process, civil or criminal, within the boundaries of the land so ceded.

APPEAL by the defendant, Morris Kraus, from a judgment of the Court of Special Sessions of the City of New York, rendered on the 28th day of May, 1924, convicting him of a violation of section 986 of the Penal Law.

*Philip V. Manning,* for the appellant.

*James I. Cuff, Assistant District Attorney [Charles J. Dodd, District Attorney,* with him on the brief], for the respondent.

YOUNG, J.:

The main question presented by this appeal relates to the jurisdiction of the State court. The crime admittedly having been committed upon property belonging to the United States, namely, the Brooklyn Navy Yard, the rule in regard to jurisdiction of the

United States upon the point in question is stated in *Fort Leaven-worth R. R. Co.* v. *Lowe* (114 U. S. 525) as follows (p. 530):

"This power of exclusive legislation is to be exercised, as thus seen, over places purchased, *by consent* of the Legislatures of the States in which they are situated, for the specific purposes enumerated. It would seem to have been the opinion of the framers of the Constitution that, without the consent of the States, the new government would not be able to acquire lands within them; and, therefore, it was provided that when it might require such lands for the erection of forts and other buildings for the defence of the country, or the discharge of other duties devolving upon it, and the consent of the States in which they were situated was obtained for their acquisition, such consent should carry with it political dominion and legislative authority over them. * * * The consent of the States to the purchase of lands within them for the special purposes named is, however, essential, under the Constitution, to the transfer to the general government, with the title, of political jurisdiction and dominion. Where lands are acquired without such consent, the possession of the United States, *unless political jurisdiction be ceded to them in some other way*, is simply that of an ordinary proprietor. The property in that case, unless used as a means to carry out the purposes of the government, is subject to the legislative authority and control of the States equally with the property of private individuals. * * *

" 'When the title is acquired by purchase by consent of the Legislatures of the States, the Federal jurisdiction is exclusive of all State authority. This follows from the declaration of the Constitution* that Congress shall have 'like authority' over such places as it has over the district which is the seat of government; that is, the power of ' exclusive legislation in all cases whatsoever.' Broader or clearer language could not be used to exclude all other authority than that of Congress; and that no other authority can be exercised over them has been the uniform opinion of Federal and State tribunals, and of the Attorneys-General. * * *

"These authorities [referring to cases cited] are sufficient to support the proposition which follows naturally from the language of the Constitution, that no other legislative power than that of Congress can be exercised over lands within a State purchased by the United States *with her consent* for one of the purposes designated; and that such consent under the Constitution operates to exclude all other legislative authority."

It seems to be conceded that the lands included within the Brooklyn Navy Yard reservation were acquired by the Federal

---

* See U. S. Const. art. 1, § 8, subd. 17.— [Rep.

government without the consent of the State Legislature, and so, under the rule stated, the Federal government would stand in the position of the ordinary landed proprietor, and the State's jurisdiction over these lands would not be affected, were it not that the Legislature of the State, by chapter 355 of the Laws of 1853, and by chapter 678 of the Laws of 1892, known as the State Law of 1892, expressly ceded to the United States all jurisdiction over said territory with certain reservations not affecting the question presented here.　Chapter 355 of the Laws of 1853, section 1, provides as follows: " The jurisdiction of this State over all the lands in and adjacent to the city of Brooklyn, belonging to the United States, and used and occupied as a navy yard and naval hospital, and which has not heretofore been ceded to the United States, is hereby ceded to the United States for the uses and purposes of a navy yard and naval hospital, on the condition contained in this act, and according to the plan furnished by the Navy Department, and bounded as follows:" and section 4 provides as follows: " The United States may retain such use and jurisdiction as long as the premises described shall be used for the purposes for which jurisdiction is ceded, and no longer.　*　*　*　Nor shall the jurisdiction so ceded to the United States impede or prevent the service or execution of any legal process, civil or criminal, under the authority of this State." Chapter 181 of the Laws of 1833 also provides in section 1 as follows: " The jurisdiction of the State of New-York is hereby ceded to the United States of America, for the purpose of erecting and maintaining a navy hospital and other necessary edifices and buildings, over all those certain tracts, pieces or parcels of land, situate, lying and being in the county of Kings, and State of New-York, bounded and contained as follows," and sections 2 and 3 of said act provide as follows: " § 2. The jurisdiction so ceded to the United States of America, shall not extend, or be construed to extend so as to impede or prevent the execution of any process of law, civil or criminal, under the authority of this State, except so far forth as such process may affect any of the real or personal property of the United States of America within the said tracts of land.　*　*　*　§ 3. The jurisdiction hereby ceded　*　*　* shall continue so long as the premises herein above specified shall remain in the occupancy of the United States of America, or of their officers, agents or servants, and no longer."

Section 28 of the State Law of 1892 provides as follows: " Cession during use for purposes thereof, with reservation of right to serve process.— Title and jurisdiction to the following tracts or parcels of land have been ceded to the United States by this State, on condition that the jurisdiction so ceded should not

prevent the execution thereon of any process, civil or criminal, issued under the authority of the State, except as such process might affect the property of the United States therein, and that such jurisdiction shall continue in the United States so long only as the land shall be used and occupied for the purposes of cession, unless the consent of the State to a different use has been granted."

Then follows, in subdivision 2 of said section, a description of land covering the Brooklyn Navy Yard in Kings county " for the purpose of erecting and maintaining a navy hospital and other necessary edifices and buildings," in the same words as contained in the act of 1833.

Section 29 of the State Law of 1892 provides as follows: " Authorization of acquisition and cession of jurisdiction thereupon, during use for purposes thereof, with reservation of right to serve process.— The United States has been authorized to acquire the following tracts or parcels of land, and jurisdiction thereof has been ceded to the United States upon such acquisition on condition that the jurisdiction so ceded should not prevent the execution thereon of any process, civil or criminal, issued under the authority of the State, except as such process might affect the property of the United States therein, and that such jurisdiction shall continue in the United States so long only as the land shall be used and occupied for the purposes of cession, unless the consent of the State to a different use has been granted."

Then follows, in subdivision 1 of said section, a description of land covering the Brooklyn Navy Yard in Kings county, idéntical with that contained in the act of 1853, " for the purpose of a navy yard and naval hospital, according to the plan furnished by the Naval Department."

By section 28 of the State Law of 1909 the following was enacted: " Cession during use for purposes thereof, with reservation of right to serve process. Title and jurisdiction to the following tracts or parcels of land have been ceded to the United States by this State, on condition that the jurisdiction so ceded should not prevent the execution thereon of any process, civil or criminal, issued under the authority of the State, except as such process might affect the property of the United States therein, and that such jurisdiction shall continue in the United States so long only as the land shall be used and occupied for the purposes of cession, unless the consent of the State to a different use has been granted."

Then follows, in subdivision 2 of said section, a description, among others, of the property comprising the Brooklyn Navy Yard " for the purpose of erecting and maintaining a navy hospital and other necessary edifices and buildings," in the same words

as contained in the act of 1833 and in subdivision 2 of section 28 of the State Law of 1892.

Section 29 of the State Law of 1909 provides as follows: " Authorization of acquisition and cession of jurisdiction thereupon, during use for purposes thereof, with reservation of right to serve process. The United States has been authorized to acquire the following tracts or parcels of land, and jurisdiction thereof has been ceded to the United States upon such acquisition on condition that the jurisdiction so ceded should not prevent the execution thereon of any process, civil or criminal, issued under the authority of the State, except as such process might affect the property of the United States therein, and that such jurisdiction shall continue in the United States so long only as the land shall be used and occupied for the purposes of cession, unless the consent of the State to a different use has been granted."

Then follows, in subdivision 1 of said section, a description of land covering the Brooklyn Navy Yard in Kings county, identical with that contained in the act of 1853 and in subdivision 1 of section 29 of the State Law of 1892, " for the purpose of a navy yard and naval hospital, according to the plan furnished by the Naval Department."

The question then presented is whether by this legislation the State courts were ousted of criminal jurisdiction over the land within the Brooklyn Navy Yard. It will be observed that chapter 355 of the Laws of 1853 ceded to the United States jurisdiction over this land comprising the Brooklyn Navy Yard " for the uses and purposes of a navy yard and naval hospital, on the condition contained in this act."

In the *Fort Leavenworth Case* (*supra*) the language used by the Kansas Legislature was as follows: " That exclusive jurisdiction be, and the same is hereby ceded to the United States over and within all the territory owned by the United States, and included within the limits of the United States military reservation known as the Fort Leavenworth Reservation, in said State, as declared from time to time by the President of the United States, saving, however, to the said State the right to serve civil or criminal process within said Reservation, in suits or prosecutions for or on account of rights acquired, obligations incurred, or crimes committed in said State, but outside of said cession and Reservation; and saving further, to said State, the right to tax railroad, bridge and other corporations, their franchises and property, on said Reservation." (Laws of Kansas of 1875, p. 95, chap. 66. See, also, Kansas R. S. [1923] §§ 27–101, 27–104.)

26

In that case the State sought to uphold a tax levied upon a railroad within the reservation and the court held that under the saving clause, above quoted, the State of Kansas had a right to tax said railroad property although it was within the reservation. It does not seem to me, however, that this is an authority for the exercise of criminal jurisdiction by the State of New York within the Brooklyn Navy Yard. In *Benson* v. *United States* (146 U. S. 325) the United States Supreme Court decided, under the same Kansas statute, that the United States has exclusive jurisdiction for the prosecution of a murder committed at the Fort Leavenworth Reservation. The jurisdiction ceded to the Federal government by chapter 355 of the Laws of 1853 was all jurisdiction subject to certain reservations, and there was no reservation in the act relative to prosecution for crime committed within the reservation. There was a reservation providing for the service and execution of legal process on the part of the State, both civil and criminal. It would seem, therefore, that this specification would exclude all other jurisdiction not mentioned.

The learned district attorney states in his brief that the only reported cases which he has been able to find in which the question of State jurisdiction within the navy yard was considered are *People* v. *Lane* (1 Edm. S. C. 116); *Armstrong* v. *Foote* (19 How. Pr. 237) and *Barrett* v. *Palmer* (135 N. Y. 336; affd., *sub nom. Palmer* v. *Barrett*, 162 U. S. 399). The *Lane* case was decided in 1845, prior to the act of 1853 referred to, but after the passage of chapter 181 of the Laws of 1833 above mentioned. (See, also, Laws of 1807, chap. 51; Laws of 1808, chap. 51.) In that case the defendant was indicted for manslaughter committed within the navy yard, and it was held that the State court had jurisdiction to try the case, the judge writing the opinion stating that the act ceding the navy yard to the United States expressly reserved to the State the operation of the laws of the State. This cession was apparently made in 1807 or 1808, and the only authority for such statement seems to be an unrecorded deed entered in volume 4 of unrecorded deeds in Kings county, which does contain such a reservation, and also attention may be called to a deed given in 1810 for part of said navy yard pursuant to chapter 51 of the Laws of 1807 and chapter 51 of the Laws of 1808, as recorded in the office of the Secretary of State in 1814 in volume 39 of Deeds at pages 103 *et seq.*, wherein a similar reservation was made, but it seems to me that this is unimportant in view of the subsequent legislation in 1853 upon the subject.

The *Armstrong* case was decided in 1860. It was an action to recover damages for assault and battery and false imprisonment,

the assault and imprisonment being committed within the navy yard. The action was in the Brooklyn City Court and the complaint was dismissed on the ground that the State had ceded exclusive jurisdiction of the place in question to the United States, and that no action could, therefore, be maintained in a State court for a tort committed therein.

*Palmer* v. *Barrett* (*supra*) was an action for trespass in connection with certain booths or market stands in Wallabout Market which were upon a part of the territory over which jurisdiction had been ceded to the Federal government by the act of 1853. It appeared that the United States had leased this portion of the land for market purposes and the United States Supreme Court held that inasmuch as the original cession of jurisdiction provided that the land so ceded for purposes of a navy yard and naval hospital contained the provision that the United States might retain such jurisdiction no longer than the premises were used for such purposes, it operated while the lease was in force to suspend the exclusive authority and jurisdiction of the United States over the leased land, and thereby made it subject to the jurisdiction of the State court.

The Court of Appeals also sustained the jurisdiction of the State, Judge O'BRIEN, writing the opinion, stating that cession of territory by one sovereignty to another does not abrogate the laws in force at the time of the cession for the administration of *private* justice; not at least until the new sovereignty has abrogated or changed them do such laws cease to operate.

The *Barrett* case was a civil case, and the court was discussing the administration of private justice. The decision in the United States Supreme Court was based upon the fact that the United States had leased the property, and so the land not being used for navy purposes became again subject to State authority because of the provision in the act of cession. At the end of the opinion Mr. Justice WHITE wrote: " Assuming, without deciding, that, if the cession of jurisdiction to the United States had been free from condition or limitation, the land should be treated and considered as within the sole jurisdiction of the United States, it is clear that under the circumstances here existing, in view of the reservation made by the State of New York in the act ceding jurisdiction, the exclusive authority of the United States over the land covered by the lease was at least suspended whilst the lease remained in force."

The only other case cited upon the question is *People* v. *Marra* (4 N. Y. Crim. Rep. 304). In this case the defendant was arrested charged with committing larceny in the post office in the borough of Manhattan. He raised the question of the jurisdiction of the State court to try him and his contention was sustained. It appears

that the cession of jurisdiction by the State relating to the land upon which the post office stands is the same as in the case of the Brooklyn Navy Yard. (See Laws of 1857, chaps. 19, 762; Laws of 1861, chap. 118; Laws of 1879, chap. 33; State Law of 1892, § 27; State Law of 1909, § 27; and statutes *supra.*)

My conclusion is that, inasmuch as the act ceding jurisdiction to the United States over the land comprising the navy yard fails to reserve to the State the right to prosecute for crimes committed therein, such right rests solely with the Federal government. Evidently the right to serve civil and criminal process within the reservation would not exist were it not for the reservation contained in the act. In order that the State might have such right, it was necessary to reserve it. All other jurisdiction, I think, rests with the Federal government so long as the land is used for the purposes specified in the act of cession.

The judgment of conviction of the Court of Special Sessions should be reversed upon the law, the information dismissed, and the defendant discharged.

KELLY, P. J., RICH, MANNING and KAPPER, JJ., concur.

Judgment of conviction of the Court of Special Sessions reversed upon the law, information dismissed, and defendant discharged.