In the Matter of the Application of XENIA B. KERNAN, Respondent, for a Writ of Habeas Corpus to Inquire into the Cause of the Detention of HELENE KERNAN.

WILLIAM F. KERNAN, Appellant.

(THE PEOPLE OF THE STATE OF NEW YORK ex rel. XENIA B. [HELENE] KERNAN, Respondent, v. WILLIAM F. KERNAN, Appellant.)

Fourth Department, May 13, 1936.

*A. Raymond Cornwall*, appearing specially, for the appellant.

*Phelps, Hudson & Wise* [*Charles A. Phelps* of counsel], for the petitioner-respondent.

THOMPSON, J. The petitioner-mother seeks the determination in habeas corpus of the custody of her daughter. The child is ten years old and is held by the respondent-father, an officer in the army of the United States stationed at Madison Barracks, where both were found at the time the writ was served upon him. Neither parent is a resident of the State of New York. Upon the return of the writ, the father appeared specially and moved to dismiss the petition and writ, upon the ground that the Supreme Court of the State of New York was without jurisdiction to entertain the proceeding, contending that the child being in residence on a military reservation of the United States, the proceeding could only be taken in a Federal court.

A court having jurisdiction of the subject-matter may inquire into the custody, control and cause of detention of any child found within its territory.

" The jurisdiction of a State to regulate the custody of infants found within its territory does not depend upon the domicile of the parents. It has its origin in the protection that is due to the incompetent or helpless   *   *   *. For this, the residence of the child suffices though the domicile be elsewhere." (*Finlay* v. *Finlay*, 240 N. Y. 429.)

Madison Barracks is a military reservation owned by the Federal government, and political dominion and legislative authority for it rests exclusively in the United States. (State Law, § 29, subd. 18; U. S. Const. art. 1, § 8, cl. 17; *People* v. *Godfrey*, 17 Johns. 225; *Palmer* v. *Barrett*, 162 U. S. 399.) It is within the boundaries of the State of New York. (State Law, § 5.) When the Federal government acquires territory from one of the States, it takes it subject to all of the laws of the State which apply to the ceded territory at the time of the cession, which are not contrary to Federal laws. The situation so continues until such time as the Federal Congress shall pass laws inconsistent with the State law. (*Kaufman* v. *Hopper*, 220 N. Y. 184; *McCarthy* v. *Packard Co.*, 105 App. Div. 436; affd. on opinion below, 182 N. Y. 555; *Barrett* v. *Palmer*, 135 id. 336; *Chicago, R. I. & P. R. Co.* v. *McGlinn*, 114 U. S. 542.)

The Congress has never passed a law giving to the Federal courts jurisdiction of habeas corpus proceedings to determine the custody of a child found within the boundaries of territory acquired by the United States by cession under the provisions of article 1, section 8, clause 17, of the Constitution of the United States, nor did the Federal courts have general power or jurisdiction over actions for divorce, actions involving the relationship of parent and child, or proceedings in habeas corpus to determine the custody of a child at the time the State of New York made this cession.

" It has been understood that, ' the whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States,' *Ex Parte Burrus*, 136 U. S. 586, 593, 594, and the jurisdiction of the courts of the United States over divorces and alimony always has been denied. *Barber* v. *Barber*, 21 How. [U. S.] 582; *Simms* v. *Simms*, 175 U. S. 162, 167." (HOLMES, J., in *Popovici* v. *Agler*, 280 U. S. 379, 383.) " It is obvious that on the face of the petition the sole question at issue was the maternity and custody of the child, and as that question was in its nature local and non-Federal there was nothing to sustain the jurisdiction." (*Matters* v. *Ryan*, 249 U. S. 375, 377.)

At the time the State of New York ceded to the United States " Such lands in the Village of Sackett's Harbor, County of Jefferson, for the erection of forts, magazines, arsenals, dock yards and other needful buildings as the government of the United States may deem necessary " (State Law, § 29, subd. 18), the Supreme Court of the State of New York was seized with all of the jurisdiction to inquire into the detention and award the custody and care of the persons and property of infants found within this territory, which was possessed by a Chancery Court of England on July 4, 1776. (Civ. Prac. Act. § 64; *Finlay* v. *Finlay*, *supra*, pp. 431–433.)

In *Barrett* v. *Palmer* (*supra*) plaintiff brought an action of trespass in the City Court of Brooklyn. The trespass complained of was committed upon land forming a part of the Brooklyn Navy Yard. (Laws of 1853, chap. 355.) The action was not transitory but local in character and jurisdiction of it could only be entertained by a court having jurisdiction of the place where it was committed. In holding that the City Court of Brooklyn had jurisdiction, the Court of Appeals said: " Congress has not, however, made any new regulations touching the administration of justice in civil cases with respect to actions arising therein, and until some such regulations have been made the municipal law of the State for the protection and enforcement of private rights through the courts [remains] unchanged."

In *Divine* v. *Unaka National Bank* (125 Tenn. 98; 140 S. W. 747; 39 L. R. A. [N. S.] 586) the Supreme Court of the State of Tennessee sustained a grant of administration upon the estate of a deceased resident of a national home for disabled volunteer soldiers by the Probate Court within whose territorial jurisdiction the home was located, and held that " when the new sovereign has not provided legislation for the territory so acquired, the laws of the former sovereign continue in force so far as needed for the protection and enforcement of the municipal or private rights of individuals residing within the territory." (Citing *Ft. Leavenworth*

*R. R. Co.* v. *Lowe*, 114 U. S. 525; *Chicago, R. I. & P. R. Co.* v. *McGlinn, supra; Downes* v. *Bidwell*, 182 U. S. 244, 298.)

In *Craig* v. *Craig* (—— Kan. ——; 56 P. [2d] 464) the Supreme Court of Kansas held that the courts within whose territory an army post or a military reservation was located had jurisdiction of actions for divorce at the suit of a person who had resided at an army post or military reservation for one year, pursuant to a statute to that effect passed by the Legislature of the State of Kansas. The court took the view that although the State of Kansas had ceded exclusive jurisdiction of the reservation to the United States with no specific reservation concerning the subject of divorce, the amendment did not constitute an unlawful encroachment on Federal jurisdiction. The opinion states further: " That Congress has power to legislate on the subject is not questioned. That it has not seen fit to do so is admitted. Approximately a half century has passed since the cession of this territory which now embraces a population of approximately 8,000 people. During this long period no Federal provision has been made for the settlement of the domestic problems of these people. At least until State laws are superseded by appropriate Federal legislation, the validity of existing legislation should be sustained."

As already seen, authority in a Federal court for the granting of the writ of habeas corpus to determine the custody of a child is not to be found either in the Constitution or the laws of the United States. Moreover, Congress having failed to pass an act giving jurisdiction to Federal courts in proceedings of this sort arising in territory ceded by a State to the United States, the Federal courts have no such jurisdiction. It follows that as jurisdiction to grant such relief rests in the first place in the courts of the ceding States, in this case the State of New York, within the boundaries of which the child, whose custody is here sought to be determined, was found, there it remains.

The conclusion reached by the Special Term is right, and should be affirmed.

All concur, except SEARS, P. J., who dissents and votes for reversal on the law and for dismissal of the proceeding in an opinion. Present — SEARS, P. J., EDGCOMB, THOMPSON, CROSBY and LEWIS, JJ.

SEARS, P. J. (dissenting). The physical presence of the infant within the territorial jurisdiction of the State is a prerequisite to the jurisdiction of the State courts to make a determination as to the infant's custody. (*Finlay* v. *Finlay*, 240 N. Y. 429.) The fundamental question before us, therefore, is whether the infant at the time this proceeding was instituted was within the territorial jurisdiction of the State of New York. Whether the United States

has acquired the exclusive sovereignty of the Sackett's Harbor Reservation (Madison Barracks) where the infant was (except as reserved by the State) under the provisions of section 8 of article I of the United States Constitution, or under the provisions of subdivision 18 of section 29 of the State Law and chapter 505 of the Laws of 1892, without regard to the Federal Constitution, need not be determined. However the sovereignty of the United States over Sackett's Harbor Reservation has been obtained, its sovereignty, subject to the reservation that it shall not prevent the execution within Sackett's Harbor Reservation, of any process, civil or criminal, issued upon the authority of the State, except as such process may affect the property of the United States, is beyond question. (*People* v. *Hillman*, 246 N. Y. 467, 479.) It has been said that such a reservation by a ceding State is for the purpose of preventing the ceded territory becoming an asylum for fugitives from justice. (*Ft. Leavenworth R. R. Co.* v. *Lowe*, 114 U. S. 525; 65 C. J. 1256.) Otherwise than as provided in the reservation, sovereignty of the United States over the territory of the Sackett's Harbor Reservation is complete and exclusive. (*People* v. *Hillman, supra; Ft. Leavenworth R. R. Co.* v. *Lowe, supra; Palmer* v. *Barrett*, 162 U. S. 399; *Benson* v. *U. S.*, 146 id. 325; *Steele* v. *Halligan*, 229 Fed. 1011.) I conclude, therefore, that the infant when in the Sackett's Harbor Reservation was not within the sovereign jurisdiction of the State of New York and that the State courts are without jurisdiction of this proceeding. It is unnecessary, in my judgment, to determine the actual jurisdiction of the Federal courts under the laws of the United States over the subject-matter of this proceeding. Upon the cession of territory by one sovereignty to another, the laws in force for the administration of private justice are not abrogated and will be enforced by the new sovereignty. (*Barrett* v. *Palmer*, 135 N. Y. 336; *Chicago, R. I. & P. R. Co.* v. *McGlinn*, 114 U. S. 542.) The ceding State, however, after the cession, acts in respect to causes of action arising thereafter in the ceded territory in the same way that it does in respect to causes of action arising in other territory not comprised within the jurisdiction of the ceding State. (*McCarthy* v. *Packard Co.*, 105 App. Div. 436; affd. on opinion below, 182 N. Y. 555.) I have not overlooked the decision in *Divine* v. *Unaka Nat. Bank* (125 Tenn. 98; 140 S. W. 747); but the fact that the United States may have failed to provide judicial procedure to enable the Federal courts to take cognizance of the subject-matter involved in this proceeding (if such is the case) seems immaterial inasmuch as the subject-matter in any event falls exclusively within the sovereign jurisdiction of the United States.

Order affirmed, with ten dollars costs and disbursements.