Sx'encer, Ch. J.,
(after stating the facts.) The question for *190 the decision of this court is, whether the cognizance of this offence belongs to the courts of the United States, or to those of this state ? It has been very ably argued, and the importance of the question has induced us to postpone a decision of it to the present term.
The jurisdiction of the courts of the United States must be derived under the eighth section of the first article and seventeenth paragraph of the constitution of the United States, which gives to the Congress “ exclusive legislation over all places purchased by the consent of the legislature of the state in ■which the same shall be, for the erection of forts, magazines, arsenals, dock-yards, and, other needful buildings.”
The only evidence of a purchase by the United States, of fort Niagara, from this state, or of a cession of any kind by it to the United States, is contained in the act of the 6th of April, 1803. (1 N. JR. L. 197.) That act authorizes the governor to agree with such person or persons as shall be authorized by the United States for that purpose, for the sale of such quantity of the lands adjoining the fort Niagara, as shall be necessary for the accommodation of that post, and to cede the right of the people of this state to the said lands to the United States.
It does not appear, nor is there the slightest ground to believe, that the powers conferred on the governor, by this act, have ever been executed, or that any cession has ever been made under it, of the fort itself, or of the adjoining lands, to the United States.
It has been argued, that this state, though they have made no cession, have tacitly consented, by a necessary implication from the act of 1803, that the United States should hold the fortress of Niagara, and that in such case, the second paragraph of the third section of the fourth article of the constitution of the United States, would give to the Congress #the like exclusive power of legislation. That section declares, “ that the Congress shall have power to dispose of, and, make all needful rules and regulations respecting the territory or other property belonging to the United States, and that nothing in the constitution shall be so construed as to prejudice any claims of the United States, or any particular state.”
The treaty of peace between the United States and Great Britain, in 1783, has also been brought into view, as containing provisions bearing on the question. That treaty contains a stipulation that his Britannic majesty should withdraw, with all convenient speed, all his garrisons from the United States, and from every post, place and harbor within the same; and the treaty of amity, commerce and navigation, concluded between Great Britain and the United States, in 1794, contains a stipulation, on the part of the former, to withdraw their troops and garrisons, from all posts and places within the boundary lines assigned by the treaty of peace, before the first *191 of June, 1796. Fort Niagara was captured from the French, in 1759, and passed, by viitue of the treaty of peace of 1763, to the crown of Great Britain; and has continued to be held 1)}’ that power, as a fortress, until it was surrendered under the treaty of 1794, since which it has been possessed and garrisoned by the United States, with a short interruption during the late war, to the present period. That fort Niagara is within the acknowledged boundaries and limits of this state is indisputable.
We consider it beyond all doubt, that the United States ac-quinal no territorial rights to any portion of this state, in virtue of the treaties of 1783 and 1794. Neither of those treaties contain any words of grant to the United States, as such ; nor should we have submitted to accept as a grant what had already been acquired by our arms, and established by the solemn declaration of independence. The Congress, under the articles of confederation, were the representatives of the several states ; and, having the power to make war and peace, were a party to the treaty of peace, in behalf of the confederated states, and every stipulation in the treaty enured to the benefit of the states in their sovereign capacities. When, therefore, it was agreed, by the #treaty of peace of 1783, that Great Britain should withdraw, with all convenient speed, its garrisons from the United States, and from every port, place and harbor within the same; that agreement was for the benefit of the several states within whose limits those garrisons were. The section of the articles of confederation removes every doubt upon this subject: it provides, that “ each state should retain its sovereignty, freedom and independence, and every power, jurisdiction, and right, which was not thereby expressly delegated to the United States in Congress assembled and it is not within our knowledge or belief, that the United States have ever claimed, or set up any pretension of property, to any fort within the boundaries of a state, under these treaties.
The occupation of fort Niagara, by the troops of the United States, since its evacuation, in pursuance of the treaty of 1794, cannot be considered either as evidence of a right in the general government to the post itself, nor as an act hostile to the rights of this state. One of the great objects in the formation of a federal government was, that it should provide for the common defence. This post was considered an essential point to be garrisoned by the troops of the United States, as a security to our frontiers ; and this state acquiesced tacitly in the propriety and necessity of the measure; under these circumstances to consider the occupation of the post as, per se, evidence of territorial right, in the United States, or as in hostility to the rights of this state, would be imputing to the federal government a disregard of its obligations and duties, arid a spirit of violence and injustice, highly derogatory to its known justice and providence. Their possession of this post *192 must be regarded, therefore, as a possession for the state, not a§a‘nst ⅛; it was a friendly occupation, not in derogation of our rights; and we regard it as a fundamental principle, that the r^lts °t sovereignty are never to be taken away by implication. In the case of the United States v. Bevans, (3 Whea-ton, 388.) Chief Justice Marshall said, “the power of exclusive legislation under the 8th section of the first article of the constitution, which is jurisdiction, is united with cession of territory, which is to be the free act of the states.” The correctness #of this remark is fully admitted ; and if the United States had the right of exclusive legislation over the fortress of Niagara, they would have also exclusive jurisdiction ; but we are of opinion, that the right of exclusive legislation within the territorial limits of any state, can be acquired by the United States only in the mode pointed out in the constitution, by purchase, by consent of the legislature of the state in which the same shall be, for the erection of forts, magazines, arsenals, dockyards, and other needful buildings. The essence of that provision is, that the state shall freely cede the particular place to the United States, for one of the specific arid enumerated objects. This jurisdiction cannot be acquired tortiously, or by disseisin of the state ; much less, can it be acquired by mere occupancy, with the implied or tacit consent of the state, when such occupancy is for the purpose of protection.
The 3d section of the 4th article of the constitution, of the United, States is clearly adapted to the territorial rights of the United States, beyond the limits or boundaries of any of the states, and to their chattel interests, and it therefore drops the expression of exclusive legislation.
To oust this state of its jurisdiction to support and maintain its laws, and to punish crimes, it must be shown that an offence committed within the acknowledged limits of the state, is clearly and exclusively cognizable by the laws and courts of the United States. In the case already cited, Chief Justice Marshall observed, that to bring the offence within the jurisdiction of the courts of the union, it must have been committed out of the jurisdiction of any state; it is not, (he says,) the offence committed, but the place in which it is committed, which must be out of the jurisdiction of the state. It does not, therefore, enter into the consideration of this question, that the prisoner and the deceased were in the service of the United States, when the crime was perpetrated. On the whole, we are perfectly satisfied that the jurisdiction of this state attaches on the crime, and extends to the person of the prisoner, and nothing remains but that judgment be passed upon him according to law.
Sentence of death was, accordingly, pronounced on the prisoner.