THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* THEODORE HILLMAN and JOSEPH C. STENCIL, Appellants.

Crimes — constitutional law — jurisdiction — State can confer no jurisdiction upon its courts where Federal Constitution gives Congress exclusive authority — crime committed on lands purchased by government with consent of State for military purposes must be tried under Federal laws before Federal tribunal — finding by jury that crime occurred within jurisdiction of court not decisive — jurisdiction of County Court — requisites to oust State of jurisdiction over lands within its boundaries — courts in determining as to jurisdiction of State may refer to instruments recorded in a public office — title to West Point Military Reservation in Federal government — effect of reservation in conveyance of " usual allowance for highways "— consent by State to purchases of land for reservation and cession of jurisdiction thereover — reservation of right to serve civil and criminal process and of right of occupancy of highways not a reservation of political dominion — State courts without jurisdiction of crime committed on highway within reservation.

1. The State of New York can confer no jurisdiction upon its courts where the Constitution of the United States gives Congress exclusive authority. If a crime in fact occurred at a place purchased by the consent of the Legislature of the State of New York and used as a military reservation, then trial must be held according to the laws made by the United States Congress and before a tribunal selected by it. (U. S. Const. art. 1, § 8.)

2. An argument that a finding by the jury that the crime occurred at a point within the jurisdiction of the Orange County Court, if made on competent evidence, destroys all basis for a contention that that court was without jurisdiction, cannot be sustained. No finding made at the trial can itself be the source of jurisdiction of the court or result in extension of jurisdiction beyond the limits of the territory where the State is sovereign.

3. The Orange County Court has jurisdiction to try all charges of crime committed within the territorial bounds of the county, unless it clearly appears that the political dominion over the place where the crime was committed was not in the State of New York. To oust the State of dominion the place must have been purchased by the

United States government for military purposes and the State must have consented to such purchase.

4. Where jurisdiction of the court is challenged upon the ground that the Legislature of the State has ceded to the United States dominion over lands conveyed to the United States, the courts are called upon to construe the relevant statutes of the Legislature and determine the boundaries of the land to which the statutes were intended to apply. As aid to such construction and determination, the court may seek the same information which was available to the Legislature, and may refer to instruments which are recorded in a public office.

5. Upon examination of the original patent, the will of the patentee, the deed of his devisee conveying lands to the government and other documents recorded in the office of the Secretary of State and of the clerk of Orange county, there can be no question but that title to West Point Military Reservation has been acquired by the United States, and the evidence shows that the crime of which defendants are accused occurred on a State highway passing through that tract.

6. The fact that the conveyance to the original patentee was made " with the usual allowance for highways " does not constitute an exception of land from the grant of the tract described by metes and bounds. The effect of the clause is merely that the State reserves the right to appropriate the customary proportion of the land embraced in the tract for highway purposes and the construction of a highway does not divest the grantee or his successors of the ownership of any of the land conveyed subject to such use.

7. By chapter 359 of the Laws of 1875 the State consented to the purchases theretofore made by the United States of the lands in the Military Reservation at West Point and ceded to it the jurisdiction over said lands, reserving the right to serve civil and criminal process and " occupancy of the highways now existing or which may exist, upon said lands under the laws of this State." The legislative cession of jurisdiction after purchase has the same effect as consent before purchase, and the reservation of the right to serve civil and criminal process upon the lands ceded does not defeat the intent to confer exclusive political dominion over the ceded lands.

8. Nor may reservation of right of occupancy of the highways now existing or which may exist upon such lands under the laws of this State be construed as a reservation, not merely of the right of occupancy, but of political dominion and legislative authority over a narrow strip of land running through the reservation. The intent evidenced by the language of the statute is to cede complete political dominion, subject only to a right of public occupancy for highway

purposes, of those parts of the land which are or may be used for highways.

9. The State courts, therefore, as matter of law, are without jurisdiction to render judgment of conviction upon defendants. They must be dealt with by the United States authorities.

*People* v. *Hillman*, 219 App. Div. 792, reversed.

(Argued October 11, 1927; decided November 22, 1927.)

APPEAL, by permission, from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered February 28, 1927, which affirmed a judgment of the Orange County Court, rendered upon a verdict convicting the defendants of the crime of robbery in the first degree.

*Henry Hirschberg* for appellants. Courts will take judicial notice of the limits of their jurisdiction, of cessions of public lands, of the boundaries of the Federal Military Reservation at West Point, of public records, documents and the general events of history. (*Lasher* v. *State*, 17 S. W. Rep. 1064; *Bissing* v. *Smith*, 85 Hun, 564; *People* v. *Snyder*, 41 N. Y. 397; *Howard* v. *Moot*, 64 N. Y. 262; *People ex rel. Schuyler* v. *Livingstone*, 123 Misc. Rep. 605; *Baker* v. *State*, 83 S. W. Rep. 1122; *Wheelock* v. *Lee*, 15 Abb. Pr. [N. S.] 24; *Beekman* v. *H. R. W. S. Ry. Co.*, 35 Fed. Rep. 3; *Swinnerton* v. *Col. Ins. Co.*, 37 N. Y. 174; *Woods* v. *Wilder*, 43 N. Y. 164.) Land purchased or acquired by the Federal government for a military reservation and ceded by the State, is under the exclusive criminal jurisdiction of Congress. (*People* v. *Kraus*, 212 App. Div. 397; *U. S.* v. *Tucker*, 122 Fed. Rep. 520; *Benson* v. *U. S.*, 146 U. S. 325; *Ft. Leavenworth* v. *U. S.*, 114 U. S. 325; *Battle* v. *U. S.*, 209 U. S. 36; *People* v. *Marra*, 4 N. Y. Cr. Rep. 304; *Beekman* v. *H. R. W. S. Ry. Co.*, 35 Fed. Rep. 3; *Matter of Ladd*, 74 Fed. Rep. 31; *Armstrong* v. *Foote*, 19 How. Pr. 237; *Dibble* v. *Clapp*, 31 How. Pr. 420; *State* v. *Morris*, 68 Atl. Rep. 1103; *U. S.* v. *Cornell*, 2 Mason, 60; *Lasher* v. *State*, 17 S. W. Rep.

1064; *People ex rel. Schuyler* v. *Livingstone,* 123 Misc. Rep. 605.)  A State highway maintained by the State and running through the military reservation would also be under the exclusive criminal jurisdiction of Congress even though highway rights of travel thereover were reserved to the People of the State. (*People ex rel. Schuyler* v. *Livingstone,* 123 Misc. Rep. 605; *Becker* v. *State,* 83 S. W. Rep. 1122; *Beekman* v. *H. R. W. S. Ry. Co.,* 35 Fed. Rep. 3.)

*Elmer H. Lemon, District Attorney,* for respondent. The court cannot take judicial notice that the place where the crime was committed was within the limits of the military reservation. (*Matter of Viemeister,* 179 N. Y. 235; *Town of North Hempstead* v. *Gregory,* 53 App. Div. 350; *Walton* v. *Stafford,* 14 App. Div. 310; 162 N. Y. 558; *Buxton* v. *City of Nashville,* 201 S. W. Rep. 512; *Keller* v. *Whittington,* 153 S. W. Rep. 808; *Line* v. *Line,* 86 Atl. Rep. 1032; *Christy* v. *Wabash R. Co.,* 191 S. W. Rep. 241; *State* v. *Wray,* 19 S. W. Rep. 86.)  Even if the government owns the fee to the land upon which the State built and maintains a State highway, that fact alone does not deprive the State of jurisdiction. (*Fort Leavenworth R. R. Co.* v. *Lowe,* 114 U. S. 525; *People* v. *Kraus,* 212 App. Div. 397; *People* v. *Godfrey,* 17 Johns. 225.)

LEHMAN, J.  The defendants have been indicted by the grand jury of the county of Orange upon a charge of robbery in the first degree committed upon a public highway in the town of Highlands in the county of Orange.  They have been convicted of the crime charged after trial in the County Court of Orange county.  It is not disputed that the People presented testimony, not contradicted by any evidence produced on behalf of the defendants, which shows that the defendants did commit a robbery as charged, upon a highway within the geo-

graphical limits of the town of Highlands and of the county of Orange. If the State of New York had legislative jurisdiction over the place where the evidence shows that the crime was committed, and might confer upon the County Court jurisdiction to try a defendant charged with crime at that point, the conviction must be affirmed. The defendants attack the judgments of conviction upon the contention that the place where according to the uncontradicted testimony the crime was committed, lies within the limits of the West Point Military Reservation where the government of the United States exercises exclusive political dominion, and where the County Court, created by and acting under authority of the State of New York, may exercise no criminal jurisdiction.

The evidence shows that the complaining witness and the defendants drove in an automobile from the village of Highland Falls along a State highway. They ascended a hill until they came to a sign post at a cross road. They proceeded a short distance from the sign post along the State highway known as the Storm King highway in a northerly direction. The robbery occurred at a point on that highway where the land on both sides is part of the West Point Military Reservation. A highway existed there for at least forty years; indeed, for as long a time as any of the witnesses, residents of the neighborhood, can remember. The evidence produced at the trial conclusively shows that the robbery occurred on a State highway which passes through a military reservation of the United States. There is little, if any, evidence to show whether the highway is part of the reservation or on land excepted from it.

Article I, section 8, of the Constitution of the United States provides that " The Congress shall have Power * * * To exercise exclusive Legislation in all Cases whatsoever, over such District (not exceeding ten Miles square) as may, by Cession of particular States, and the

acceptance of Congress, become the Seat of the Government of the United States, and to exercise like Authority over all Places purchased by the Consent of the Legislature of the State in which the Same shall be, for the Erection of Forts, Magazines, Arsenals, dock-Yards and other needful Buildings." The State of New York can confer no jurisdiction upon its courts where the Constitution of the United States gives Congress exclusive authority. If the crime in fact occurred at a place purchased " by the consent of the Legislature " of the State of New York and used as the West Point Military Reservation, then trial must be held according to the laws made by the United States Congress and before a tribunal selected by it.

The trial court in this case submitted to the jury the question of whether the crime occurred at a point within the jurisdiction of the County Court of Orange county. The jury found it did. The People claim upon this appeal that this finding, if made on competent evidence, destroys all basis for the contention of the defendants that the County Court was without jurisdiction. The County Court can exercise no jurisdiction not conferred upon it by the State. In terms the State has conferred upon the court jurisdiction to pass upon charges of crime alleged to have been committed within the territorial limits of Orange county. The courts of the State of New York, deriving their authority from the Constitution or the Legislature of the State, are the creatures of the State. Where exclusive political dominion is lodged in another sovereign, the State can confer no authority upon its courts, and its courts can exercise no authority which the State does not possess. No finding made at the trial can itself be the source of jurisdiction of the court or result in extension of jurisdiction beyond the limits of the territory where the State is sovereign.

Where the State confers upon its courts jurisdiction to try a charge, contained in an indictment or information,

that a crime has been committed within the territorial
limits of its sovereignty or within some subdivision
thereof, an issuable question of fact which the court has
jurisdiction to try may arise as to whether the crime
was committed as charged at a place within such territorial
limits. The determination of the court of an issuable
question of fact which the court has jurisdiction to try may
form the basis for a conclusion that the court has jurisdiction
tion to render judgment. Where there is a dispute as to
the *place* where a crime was committed, a question of fact
may be presented upon which the jury must pass. (*State
v. Rose,* 136 Atl. Rep. 295; *Oakes v. State,* 135 Ark. 221;
*United States v. Lewis,* 111 Fed. Rep. 630.) Even where
there is no dispute as to the place where the crime was
committed, a question of fact, which the court has jurisdiction
diction to determine, may arise as to whether the
boundaries of a State or subdivision of a State are on one
side or the other of that place. (*United States v. Jackalow,*
66 U. S. 484; *State v. Malone,* 134 La. 779; *Mendiola
v. State,* 18 Texas Ct. App. 462; *Matter of Newton,* 16
C. B. 97.)

Doubtless where the sovereign power which creates the
courts and confers jurisdiction upon them may punish
crime committed on either side of a disputed boundary,
it may confer upon any of its courts jurisdiction to
determine a disputed question of fact as to where the
boundary is located and may make appropriate finding
upon such question the basis of a conclusion of jurisdiction
diction in the court to render a judgment of conviction.
The right of a State to confer upon its courts jurisdiction
to determine as a question of fact the location of a disputed
puted boundary of the State itself, when the jurisdiction
of the court is challenged upon the ground that the
political dominion of the State and the jurisdiction of its
courts does not extend beyond the true boundaries of the
State, is not so clear. If a determination of the location
of the boundary between two sovereignties can be arrived

at only by weighing conflicting evidence or conflicting inferences that may be drawn from the evidence, crime committed near the disputed boundary may go unwhipt of justice unless some tribunal is empowered by each State to take or refuse jurisdiction in accordance with the finding of fact it may make as to the location of the boundaries of the State. Accordingly, it has been held that the *location* of a boundary even of the sovereign State itself may present a question of fact which the courts of the State have jurisdiction to determine upon the evidence presented at the trial of an accused. (*State* v. *Barrington,* 141 N. C. 820; *State* v. *Burton,* 106 La. 732.) We are not now called upon to decide whether in similar circumstances we would reach a like conclusion. These cases hold only that the *location* of a boundary line may, under some circumstances, present a question of fact, but the construction of the *description* of a boundary line presents a question of law. In the case now under consideration, it does not appear that there is any dispute of fact as to the boundaries of the West Point Military Reservation which the courts of this State have jurisdiction to determine under any authority which the State has attempted to, or indeed perhaps could, confer upon them.

The political dominion of the State of New York extends over all the land within its territorial bounds, except where dominion over particular lands has become vested in some other political authority. The courts of Orange county have jurisdiction to try all charges of crime committed within the territorial bounds of the county, unless it clearly appears that the political dominion over the place where the crime was committed is not in the State of New York. Political dominion of the State over all places within its boundaries may be presumed or, at least, the State is not called upon to negative the existence of possible exception to such dominion. To oust the State of dominion over the place where the crime was committed, two facts must exist:

*First,* that place must have been purchased by the United States government for military purposes, and *second,* the Legislature must have consented to such purchase. (*People* v. *Godfrey,* 17 Johns. 225; *Fort Leavenworth R. R. Co.* v. *Lowe,* 114 U. S. 525.)

At the trial no evidence was offered of the boundaries of the West Point Military Reservation, but there is testimony by witnesses for the People that the land on all sides of the point on the highway where the crime was committed belongs to the United States and is part of the Military Reservation at West Point, and that the land about this point was known as the King Avery place. No evidence was produced at the trial to show the contents of the deeds by which the United States obtained title to this land, except the testimony of one witness, who stated that title to the land was acquired by the United States in 1790 under the " John Moore patent; " that this deed or patent is filed in the office of the Secretary of State and that this deed contains a reservation of rights in the highway. This testimony in regard to the reservation of rights in the highway is merely a conclusion drawn from the reading of the deed, and question of the construction of the language of a deed is one of law, not of fact. It is said, however, that the court may not take judicial notice of the contents of the deed.

The right of the court to refer to the deed itself for information in regard to its language does not depend upon the ordinary rules which define those matters of which the courts may take judicial notice. The State of New York is without political dominion over the highway if the highway was constructed over land which was in fact ceded to the United States with the consent of the Legislature. The courts of the State may not in such event under color of authority from the State intrude upon the land. The authority of the State depends not upon the information as to the facts which may be

available to an officer assuming to act upon such authority, but upon the existence of the facts. In no case which has been cited to us or which we have found, except possibly *People* v. *Collins* (105 Cal. 504), has any suggestion been made that evidence *must* be presented to a court of a State to show the territorial bounds of the political dominion of the State. It has been said often that the courts are required to take cognizance of the territorial bounds of their own jurisdiction. (*Rogers* v. *Cady,* 104 Cal. 288.) Certainly where jurisdiction of the court is challenged upon the ground that the Legislature of the State has ceded to the United States dominion over lands conveyed to the United States, the courts are called upon to construe the relevant statutes of the Legislature and determine the boundaries of the land to which the statutes were intended to apply. As aid to such construction and determination, the court may seek the same information which was available to the Legislature, and may refer to instruments which are recorded in a public office. At least where the limits of the State's political dominion depends solely upon the construction of deeds and statutes, a question of law is presented. Such question " cannot be made an ' issue ' between the parties to be determined by the court in each case upon conflicting evidence presented in that case." (*Rogers* v. *Cady, supra.*)

The " Moore patent," dated March 25th in the year 1747, recorded in the office of the Secretary of State of New York (see Book of Patents No. 12, page 228), conveys to " the king's loving subject John Moore," under the great seal of the Province of New York, witnessed by George Cheston, Captain General and Governor in Chief of that Province, a tract of land adjacent to another tract " formerly granted to Charles Congreve but now in the possession of the said John Moore." The tract is described as " containing two hundred and eighty acres, and the usual allowance for highways."

The patent referred to in the Moore patent conveys to Charles Congreve, Gent., " eight hundred acres of land with allowance for highways." .

John Moore died soon after the patent was issued to him. His will was probated and letters testamentary were issued thereon on November 9th, 1749. (See liber 17, page 44, of Wills in the office of the surrogate of the city and county of New York.) In his will Moore devised to his son Stephen " the Lands in the Highlands that I bought of Charles Congreve with all the Building and Appurtenances thereunto belonging, together with three negroes named Anthony, Cumberland and Voilett and all the stock thereon, and also the Tract of Land adjoyning to the above tract of Land (bought of Congreve) lately patented to me this last Containing by pattent about two hundred and eighty acres." In 1790 the United States Congress authorized the President to purchase lands at West Point and in the same year Stephen Moore and his wife Grisey conveyed the property received under his father's will to the United States. The deed and accompanying documents are recorded in the office of the Secretary of State of the State of New York. (See Book of Deeds, No. 24, page 74.)

In 1811, dispute having arisen as to the boundaries of the public lands of the United States at West Point, Congress authorized the Secretary of State to " ascertain and settle, by the appointment of commissioners, the exterior line of the public land at West Point with the adjoining proprietor." (See Laws of the United States, vol. 4th, chapter 284 [LXXIV].) Accordingly, three commissioners were appointed who made a report on January 22, 1812. This report, together with a map showing the boundaries of the land of the United States, was recorded in the office of the Secretary of the State of New York. (See Book of Deeds, No. 38, page 521.) The place of the robbery is within the boundaries of the Moore patent as shown on this map.

Later, one King Avery claimed that his wife had acquired through long occupancy title to the lands included in the Moore patent. An action of ejectment was brought against him in the Circuit Court of the United States. Judgment was entered in the action against King Avery on August 6th, 1839. Avery's wife also gave to the United States a quitclaim deed dated February 22, 1838, and recorded in Orange county (Liber 61 of Deeds, page 184).

There can be no question that the United States has acquired the full title to the tract conveyed to John Moore by royal patent in 1747, and that the robbery occurred on this tract. The conveyance was made, as we have pointed out, "with the usual allowance for highways." Here is no exception of land from the grant of the tract described by metes and bounds. Ownership to the tract was transferred from the sovereign to his subject. The effect of the clause is merely that the State reserves the right to appropriate the customary proportion of the land embraced in the tract for highway purposes. (*De Camp* v. *Thomson*, 16 App. Div. 528; affd., 159 N. Y. 436, with express approval of the opinion written at the Appellate Division.) Even if in this case the construction of the highway may be deemed an appropriation for such purpose, it does not divest the grantee or his successors of the ownership of any of the land conveyed subject to such use.

There remains only the question of whether the cession of the land is " by the consent of the Legislature." From time to time the Legislature has passed statutes consenting to the cession of particular tracts of land at West Point or expressly ceding to the United States jurisdiction over such tracts. The first statute which is comprehensive in scope seems to be chapter 359, Laws of 1875. By that statute it is provided that " consent is hereby given under paragraph sixteen of section eight, article one, of the Constitution of the United States, to the respective purchases heretofore made by the United States, of the several

tracts of land at West Point, in the county of Orange, now held and owned by the United States for the erection and maintenance thereon of forts, arsenals * * * etc., and the Legislature hereby also cedes the jurisdiction over said lands to the United States, reserving the right to serve civil and criminal process as now existing, except so far as such process may affect the real or personal property of the United States and occupancy of the highways now existing or which may exist, upon said lands under the laws of this State."

It is settled that the legislative cession of jurisdiction after purchase has the same effect as consent before purchase. (*Palmer* v. *Barrett*, 162 U. S. 399; *Steele* v. *Halligan*, 229 Fed. Rep. 1011, at page 1016; *United States* v. *Tucker*, 122 Fed. Rep. 518.) The reservation of the right to serve civil and criminal process upon the lands ceded does not defeat the intent to confer exclusive political dominion over the ceded lands, and the State courts have no jurisdiction over crimes committed thereon. (*Palmer* v. *Barrett, supra; Benson* v. *United States*, 146 U. S. 325; *Fort Leavenworth R. R. Co.* v. *Lowe, supra.*) Reservation of right of occupancy of the highways now existing or which may exist upon such lands under the laws of this State should not be construed as a reservation not merely of the right of occupancy but of political dominion and legislative authority over a narrow strip of land running through the reservation. We are not now called upon to determine the limits of the right of occupancy of highways reserved either under the original royal patents or under the legislative cession of jurisdiction to the United States. The reservation in the statute may not be stretched beyond the intent evidenced by the language of the statute to cede complete political dominion, subject only to a right of public occupancy for highway purposes, of those parts of the land which are or may be used for highways. (See *Matter of Ladd*, 74 Fed. Rep. 31.)

In this conclusion we are confirmed by the interpretation which the Legislature itself has placed upon the language of the reservation. In the State Law (Chapter 59 of the Laws of 1909, section 22 [Cons. Laws, ch. 57]) the Legislature has provided: " Title and jurisdiction to the following described tracts or parcels of land have been ceded to the United States by this State on condition the jurisdiction so ceded should not prevent the execution thereon of any process, civil or criminal, issued under the authority of the State, except as such process might affect the property of the United States * * * 27. At West Point, Orange County. Certain tracts of land at West Point, Orange County, acquired by the United States prior to May 15, 1875, for the erection and maintenance thereon of forts, arsenals, docks and piers, military academy * * *, etc." It is significant that the Legislature in this statute does not include as a reservation of title or jurisdiction the clause of the original statute reserving occupancy of the highways. The fact that in chapter 164 of the Laws of 1908 the Legislature excepted " public highways " from its cession of jurisdiction of lands subsequently acquired by the United States has little if any bearing upon the construction of the statutes which apply to earlier conveyances.

The crime was committed on a point in the highway upon land which had been conveyed to the United States and was used as a military reservation. Deeds and patents recorded in public offices describe the boundaries of the land. The construction of those deeds presents a question of law. Our construction is that title to the land is in the United States, though the State has some right of occupancy in the land for highway purposes which we do not now define. The Legislature has ceded full political dominion of the land acquired before May 15th, 1875, to the United States government subject to a right of occupancy of the highways. The courts of the State have no jurisdiction over crime committed on

these lands.   In construing the statute the courts must
determine as matter of law the boundaries of the land
over which the State has ceded jurisdiction.   The con-
clusion follows that the courts of New York in this case
as matter of law are without jurisdiction to render
judgment of conviction upon these defendants.   They
must be dealt with by the United States authorities.

The judgment of the Appellate Division and the judg-
ment of conviction in the County Court should be
reversed and the indictment dismissed.

CARDOZO, Ch. J., POUND, CRANE, ANDREWS, KELLOGG
and O'BRIEN, JJ., concur.

Judgment accordingly.